

1  DAVID ANTON (SBN 94852)
   1717 Redwood Lane
2  Davis, CA 95616
   Telephone: (530) 759-8421
3  davidantonlaw@gmail.com

4

5  Counsel for Qui Tam Relator Anthony Smith

6

7                    **SEALED**

8              **BY COURT ORDER**

   **UNITED STATES DISTRICT COURT**

9

   **NORTHERN DISTRICT OF CALIFORNIA**

10

11 **THE UNITED STATES OF AMERICA ex**     Case No.
   **rel., ANTHONY SMITH**
12                                         
        Plaintiff and Qui Tam Relator in
13      Interest,
                                           **COMPLAINT FOR:**
14              v.                          **FALSE CLAIMS ACT VIOLATION**
                                           **PURSUANT TO 31 U.S.C. §3729 et seq.,**
15 **TETRA TECH EC, INC.;**
   **RADIOLOGICAL SURVEY &**               **[FILED UNDER SEAL - 31 USC §3730]**
16 **REMEDIATION SERVICES, LLC; THE**
   **SHAW GROUP; SHAW**                    **Jury Trial Demanded**
17 **ENVIRONMENTAL AND**
   **INFRASTRUCTURE, INC.; CHICAGO**
18 **BRIDGE & IRON, INC.,**

19
        Defendants.
20

21

22                      **PARTIES**

23      1.    Qui Tam Relator Anthony Smith, hereinafter Smith, was trained as a

24 radiation control technician.  Mr. Smith was employed at various periods of time,

25 beginning in approximately 2001, as a radiation control technician.  Smith worked at

26 Hunters Point Naval Shipyard initially for New World Environmental, Inc. doing

27 business as New World Technology beginning in approximately 2002 for

28

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

                                    1.

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

1      approximately a year as a radiation control technician. Smith returned to Hunters

2      Point Naval Shipyard as a radiation control technician in approximately 2006 for less

3      than a full year. Smith returned once again the Hunters Point Naval Shipyard to work

4      as a radiation control technician on or about March 28, 2008 and remained at Hunters

5      Point Naval Shipyard as a radiation control technician until September 28, 2012.

6      When Smith was laid off with others in September of 2012, Smith was informed he

7      would be returned to work at Hunters Point upon the initiation of work in other areas

8      of Hunters Point for radiation surveys and remediation.

9          2.      In early 2010, Smith's employer, a sub-contractor to Tetra Tech EC, Inc.

10      changed from New World Environmental, Inc. to another sub-contractor of Tetra Tech

11      EC, Inc. named Radiological Survey & Remediation Services, Inc., herein referred to

12      as RSRS. RSRS had been a sub-contractor of Tetra Tech EC, Inc. at Hunters Point

13      throughout Smith's last period of employment at Hunters Point which had begun on

14      March 28, 2008. Management of RSRS and supervisors of Tetra Tech EC, Inc.

15      informed Smith that he would be called back to work after the lay-off of September

16      28, 2012. In early 2013, Smith learned that others had been called back to work at

17      Hunters Point, but Smith had not receive a call back to work. Smith called

18      supervisors of Tetra Tech EC, Inc. and inquired if he was going to be recalled to work,

19      and was informed he would not be recalled. Smith asked why he had not been

20      recalled to work and was told that he was not being recalled to work because the

21      government had raised issues related to radiological work Smith and others had

22      performed.

23          3.      Smith individually and through counsel of Smith have conducted

24      investigations into the radiological remediation that has been performed for the United

25      States Navy in the California Bay Area, in particular Hunters Point Naval Shipyard,

26      Treasure Island, and Alameda Naval base. Smith through his own personal

27      knowledge and the investigation he and his counsel have conducted have direct and

28

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-0421

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

1   independent information regarding false claims submitted by the Defendants to the

2   United States for payment, independent of information publicly disclosed.

3       4.    Smith became aware that Tetra Tech EC, Inc. produced a report titled

4   "Investigation Conclusion Anomalous Soil Samples At Hunters Point Naval

5   Shipyard". The report implied that Smith had conducted false soil sampling at

6   Hunters Point on his own and contrary to the directions of his supervisors. Smith

7   concluded that the report was inaccurate and tried to falsely place blame on Smith and

8   other co-workers. Smith consulted with counsel to investigate matters related to

9   radiological remediation conducted on behalf of the Navy and to explore ways to

10  bring to light the true circumstances involved in radiological remediation conducted

11  on behalf of the Navy in the California Bay Area.

12  5.    The information contained herein pertaining to fraud engaged in by defendants

13  at the expense of the United State of America, and the United States Navy has not

14  been publicly disclosed as defined by 31 USC §3730(e)(4)(A). Relator is an original

15  source for all information herein. Relator has direct and independent knowledge of

16  the facts and false statements herein alleged. Relator has met with the United States

17  Attorney General's representatives, as well as the United States Navy investigators, as

18  well as provided written disclosures prior to the filing of this False Claims Act suit.

19  Federal jurisdiction is proper for this action is based on a federal statute, 31 USC

20  §3279 and §3730.

21  6.    Defendant Tetra Tech EC, Inc. is a corporation that has contracted with the

22  United States Navy and the United States government to perform clean-up and

23  remediation services of hazardous wastes, including radioactive materials, at the

24  closed Hunters Point Naval Shipyard in San Francisco, the Treasure Island Naval

25  Base in San Francisco, and the Alameda Naval Base in Alameda County, California.

26  On information and belief, it is alleged that the principal business office of Tetra Tech

27  EC, is located in California. Defendant Tetra Tech EC, Inc. is a wholly owned

28  corporate subsidiary of Tetra Tech, Inc.

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-8421

3.

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

7.     Radiological Survey & Remediation Services, LLC (herein RSRS) is a limited liability corporation owned by Daryl DeLong and Brian Henderson. RSRS provided technical workers and performed services related to the radiological remediation for the United States Navy at Hunters Point, Treasure Island, and Alameda Naval station.  RSRS provided these service generally through sub-contracts with the prime contractors of the United States Navy, including Tetra Tec EC, Inc., the Shaw Group, and Chicago Bridge and Iron, Inc.

8.     The Shaw Group is a corporation that contracted with the United States Navy and the United States government to perform clean-up and remediation services of hazardous wastes, including radioactive materials, at the closed Hunters Point Naval Shipyard in San Francisco, the Treasure Island Naval Base in San Francisco, and the Alameda Naval Base in Alameda County, California.  The Shaw Group was purchased by Chicago Bridge and Iron, Inc., and is a wholly owned subsidiary of Chicago Bridge and Iron, Inc.

## FALSE CLAIMS ACT FACTS AND CLAIMS UNDER
### §3729 (a) (1)(A), (B), (C) and (D)

## Hunters Point Naval Shipyard Soil Switching Fraud

9.     Beginning in 1939, the United State of America acquired property commonly referred to as the Hunters Point Shipyard for World War II purposes.  The facility was renamed the Hunters Point Naval Shipyard.  The Department of Defense also used these properties to conduct radiological activities including efforts to remove radiation from ships involved in the nuclear blast testing at the Bikini Atoll in 1946, extensive use of radioactive radium, and operation of the Radiological Defense Laboratory on multiple sites within Hunters Point from until 1979.  Additionally,

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-6421

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

1   orher federally operated facilities and non-federal facilities and universities shipped

2   radioactive wastes to Hunters Point.  The conduct of these activities contaminated

3   with radioactivity the Hunters Point ground, buildings, sewer lines, landfills, and the

4   San Francisco Bay.

5        10.    The United States Congress enacted the Defense Base Closure and

6   Realignment Act of 1990 (DBCRA).  The Hunters Point Naval Shipyard was selected

7   for closure under the Act in 1991.  The United State of America entered into

8   agreements with the State of California and the City and County of San Francisco that

9   related to joint jurisdiction and authority between the Federal, State, and San

10  Francisco agencies over the property's remediation and ultimate transfer of the

11  property to the City and County of San Francisco.

12       11.    In 1989, the United States Environmental Protection Agency placed the

13  Hunters Point Naval Shipyard on the National Priorities List as a Superfund site

14  pursuant to the Comprehensive Environmental Response, Compensation, and Liability

15  Act (CERCLA), as amended by the Superfund Amendments and Reauthorization Act

16  (SARA).

17       12.    Defendant Tetra Tech EC, Inc. contracted with the United States

18  government to provide testing and remediation services for the removal of

19  radiological materials pursuant to the DBCRA, CERCRA and Superfund designation

20  of Hunters Point Shipyard.  The contracts and related authorization documentation

21  between the United States, through its agencies, including but not limited to the

22  Department of the Navy, with defendant Tetra Tech EC, Inc. included directives as to

23  the specifications for testing, reporting, and standards for remediation.

24       13.    The contract and incorporated requirements for the testing, surveying and

25  remediation for radioactive materials at Hunters Point required defendant Tetra Tech

26  EC, Inc. to have employees take samples of soil and other materials, accurately and

27  truthfully report the locations of the samples obtained, complete a truthful and

28

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-0421

5.

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

1  accurate Chain of Custody document for the samples obtained, and provide the
2  samples to the on-site laboratory.

3      14.    The soil and other material samples were required to be tested by Tetra
4  Tech EC's on site laboratory, as well a selection of the samples tested by a third party
5  off site laboratory.

6      15.    Beginning in 2008, management employees of Tetra Tech EC, Inc.,
7  including but not limited to the Tetra Tech EC, Inc. Hunters Point General Manager,
8  William "Bill" Dougherty, Construction Superintendent Dennis McWade, Radiation
9  Field Supervisor Steven Rolfe, and Radiation Field Supervisor Justin Hubbard, and
10 sub-contractor RSRS owner and official Daryl Delong, and others ordered employees
11 of RSRS to create false records and reports pertaining to the samples taken at Hunters
12 Point for radioactive materials that were delivered to the laboratory.  The faked soil
13 sampling took place for samples in areas that had been trenched, in areas that had once
14 had buildings, and in surface areas of Hunters Point.

15     16.    RSRS Radiation Control Technicians (RCT), including but not limited to
16 Anthony Smith, Ray Roberson, Joe Cunningham, Jeff Rolfe, Marie Winder, Jane
17 Taylor, Blake Willet, and Rick Zahinski were ordered to obtain soil and material
18 samples for radiological testing in a manner that was intentionally and knowingly
19 false.  These Radiation Control Technicians were required to obtain samples in what
20 would appear to an outsider that the samples were being taken in the field, be it in a
21 building, or an area that had been where a building had been, open areas, or excavated
22 trenches, or similar location, and would have appeared to be properly taken according
23 to Standard Operating Procedures (SOP) established by the Navy and required under
24 the contract with the United States.  However, the Radiation Control Technicians took
25 the soil samples to a connex structure in which Tetra Tech EC, Inc. supervisors and
26 other RSRS, Inc. employees received the soil samples in violation of the SOP chain of
27 custody requirements, violating explicit directive and SOP established by the Navy.
28 The Tetra Tech EC, Inc. supervisors at the connex involved in receiving the soil in the

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-8421

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

connex engaged in having the soil samples fraudulently switched. The Tetra Tech EC, Inc. supervisors at the connex buildings involved in the receiving and overseeing the fraudulent swapping of the soil samples were primarily Steve Rolfe and Justin Hubbard.

17. The Tetra Tech EC, Inc. supervisors directed the Radiation Control Technicians to obtain soil in 5 gallon buckets or other containers from soil locations on Hunters Point that the RCT and Tetra Tech EC, Inc. supervisors had knowledge from prior experience were free of radioactive materials above radiological release llevels. Some of the time the soil obtained for this fraud was obtained from Hunters Point areas that had been previously scanned and evaluated to have had no radiological contamination above release levels, and had been disturbed so it was relatively easy to obtain. Some of the time the soil obtained for this fraud was obtained from soils that had been deposited at Hunters Point for fill purposes and was able to be accessed. The RCT workers then took the soil free of high radioactive material intended to be used for this fraud to the connex to the Tetra Tech EC, Inc. supervisors and RSRS, Inc. employees in the connex as directed. The RSRS employees in the connex who were involved in the falsification of the COC documentation, and involved in the fraudulent switching of the soil samples under the direction of the Tetra Tech EC, Inc. supervisors were and included, among others, Rick Zahinski, Jane Taylor, Marie Winder, Tina Rolfe, Kathi Rolfe, Blake Willet, and Jeff Rolfe. In the connex the Tetra Tech EC, Inc. supervisor directed RSRS employees to switch the soil samples so that the soil from other locations was falsely put into the sample containers containing a chain of custody document that falsely listed the location the soil was obtained from on Hunters Point. The chain of custody documents were fabricated to fraudulently appear to follow procedures. The Tetra Tech EC, Inc. supervisors and RSRS employees, after the soil samples were fraudulently switched then gave the fake samples to RCT workers and escorted the RCT to the on-site Hunters Point laboratory. At the laboratory the Tetra Tech EC,

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-6421

7.

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

Inc. supervisor assisted in the delivery of the soil samples and assured that the false samples were falsely logged as having been properly obtained and tracked as part of the fraud.

18.     The false samples were then tested by the on-site laboratory, and a selection of the samples were submitted to a third party laboratory.  The laboratory results were submitted to the Navy and regulators as part of submissions seeking payment for services from the Navy.  The truth and accuracy of the laboratory results reflecting actual sampling of the areas the samples were purportedly taken from was material in the decisions of the Navy to make payments to defendants for the services. The representations by defendants Tetra Tech EC, Inc., and RSRS, LLC were knowingly false and material to the process for submission for payment and the review and decisions by the United States in regards to the making of payments to these defendants under the contracts involved.

19.     Defendants Tetra Tech EC, Inc., and RSRS conspired to engage in fraud and the submission of false statements regarding the taking of soil samples by the proper taking of soil samples, and then fraudulently switching the soil samples with soil that were believed to contain soil that did not have radioactive material above the release levels.  Relator Smith is personally aware that the soil sample switching in the connex at the direction of Tetra Tech EC, Inc. supervisors and conducted by RSRS employees took place a number of months following the removal of the Radiation Safety Officer Representative Elbert Blowers from the Hunters Point facility, and estimates at this time the beginning of that process with his personal knowledge to be approximately mid-2010 and continued through Relator's release from work at Hunters Point due to work force cuts on September 28, 2012.  On information and belief, it is alleged that the fraudulent practices of switching soil samples taken in the field with soil obtained from other areas that was believed to be free of radioactive material above release levels continued as a standard operating practice by Defendants Tetra Tech EC, Inc. and RSRS thereafter for a minimum of a couple of months, and

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

1   thereafter was limited and became more curtailed due to questions that arose regarding
2   the laboratory results from samples that raised questions as to why certain tested
3   levels of Potassium 40 were different from prior samples taken from the same or
4   similar areas.  The fake soil samples obtained were obtained from areas that would
5   have had standard Potassium 40 levels when those fake soil samples were obtained
6   from areas of Hunters Point.  The fake samples that contained very low levels of
7   Potassium 40 were when some of the faked soil samples were taken from some of the
8   backfill material that had been deposited at Hunters Point and the RCTs involved from
9   time to time took the soil for the fake samples from a particular area of backfill that
10  had very low levels of Potassium 40 and low readings for other radioactive markers.
11  Some of the backfill materials used for the fake samples had low levels for Radium
12  and Cesium but do not appear to have had the low levels of Potassium 40 that certain
13  other delivered backfill material contained.

14      20.    The false records of soil samples tested for radioactivity were submitted
15  on a regular and often daily basis to government officials of the United States as part
16  of the reporting requirement under the contract with the Navy.  The false records of
17  soil samples were incorporated into progress reports submitted by Defendants to the
18  United States for governmental review of the remediation progress of Hunters Point.
19  The Defendants submitted Final Status Surveys to the United States containing the
20  false records of soil samples tested for radioactivity to report final radioactive
21  remediation meeting free release goals by the Navy for the radioactive clean-up of
22  Hunters Point.  These records were material to the contract and to the demand for
23  payment by the Defendants for the radioactive remediation work performed at Hunters
24  Point.

25      21.    The false records of soil samples tested for radioactivity were submitted
26  on a regular basis to Laurie Lowman, the Navy's Lead Environmental Protection
27  Manager of the Navy's Radiological Affairs Support Office (RASO), others under the
28  direction of Laurie Lowman, and also to the Navy's Chief of Naval Operations Energy

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-8421

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

1  and Environmental Readiness Division (N45) Radiological Controls (RADCON)
2  Branch Office with the Navy's Facilities Engineering Command Southwest
3  (NAVFAC SW), and the Naval Sea Systems Command (NAVSEA 04N) Radiological
4  Controls Office.  The false records of soil samples tested for radioactivity were
5  incorporated and attached to the Final Status Surveys of each unit area contracted to
6  be remediated between the Navy and Defendants.  The Final Status Surveys were
7  submitted with demands for payments under the contract with the Navy by Tetra Tech
8  EC, Inc.  The base contract with the Navy included contract number N62473-10-D-
9  0809 and included no less than twelve CTO's to the contract designed as Nos. 0001-
10  0012.

11      22.     Each knowingly made false record of soil samples due to the fraudulent
12  switching of soil in the soil samples taken for radioactive testing at Hunters Point
13  caused to made a false statement material to a false and fraudulent claim by Tetra
14  Tech EC, Inc. for payment from the Navy, done by RSRS and by Tetra Tech EC, Inc.
15  jointly and in conspiracy together, in violation of the False Claims Act 31 USC
16  Section 3729.

17      23.     The United States of America has been damages by the false claims
18  submitted by Defendants.  The United States of America contracted with Defendant
19  Tetra Tech EC, Inc. for the remediation and removal of radioactive materials above a
20  specified level for the health and safety of the environment, the public, and future
21  generations.  The fraudulent switching of soil samples to obtain a false clearance of
22  areas contracted to be properly remediated of radioactive wastes deprives the United
23  States of America of the basic service that was contracted for with Defendants.  The
24  fraudulent switching of soil samples creates unlimited future liability for the United
25  State of America for the agreements between the United States of America and the
26  City and County of San Francisco provide that the United States will remain
27  responsible and liable for the radioactive remediation of Hunters Point after the
28  property is deeded over to San Francisco should it be discovered that the remediation

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-8421

10.

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

did not fully and properly remove radioactivity. The Navy will and has incurred costs, expenses, and delays in the remediation of Hunters Point that should not have been incurred, but for the fraud of Defendants Tetra Tech EC, Inc. and RSRS in switching soil samples. The full costs directly and derivatively related to the fraud accomplished by Defendants Tetra Tech EC, Inc. and RSRS are extensive and as of yet not fully known, and will be established at trial.

24.     Each false record of soil sample, resulting false laboratory test, and resulting false report to the Navy in support of a claim for payment is a false claim under 31 USC Section 3729(a) for which a civil penalty is required, and three times the amount of damages that the United States has and will sustain because of the acts of Tetra Tech EC, Inc. and RSRS in fraudulently switching soil samples.

**Treasure Island Copper Removal and Radiation Remediation False Claims**

25.     Relator took efforts to meet with the United States Attorney General's and Department of Justice office representatives in February of 2015 to disclose information regarding the fraudulent practices of Tetra Tech EC, Inc. and RSRS. The United States Attorney General's office and Department of Justice office representatives declined to meet with Relator in February of 2015.

26.     In the first half of 2015, Relator learned that Tetra Tech EC, Inc. and RSRS were involved in a cover-up of the companies' fraudulent sampling activity at Hunters Point and were seeking to place blame on the fraudulent soil sampling in a few limited locations to Relator and two others who had been employees of RSRS. Relator requested present counsel for Relator to assist Relator in disclosing the truth regarding the fraudulent soil sampling and to investigate on Relator's behalf the extent of the fraudulent activity of Tetra Tech EC, Inc. and RSRS. Through the efforts of Relator and his counsel, efforts were made to bring forth public disclosure of Tetra Tech EC, Inc. non-public documents that disclosed that false soil samples for

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

11.

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

radiological testing had been taken at Hunters Point.  Through the concerted efforts of
Relator and his counsel, non-publicly disclosed documents were obtained and
reviewed, individuals were interviewed, and remediation sites were visited and
examined.  As a result of these independent and direct efforts by Relator and his
agents, information that has not been publically disclosed regarding false records and
statements material to false claims by Shaw Environmental and Infrastructure, of the
Shaw Group, which has been purchased by Chicago Bridge and Iron, Inc., (herein
referred to as "Shaw") and RSRS have been discovered.

27.     Relator is an original source of the information pertaining to Hunters
Point alleged supra, and has voluntarily provided the information to the United States
government by in person disclosure in November of 2015 to a United States Attorney
General representative and a United States Navy representative and by written
voluntary disclosure to United States Attorney General and to a Department of Justice
representative on February 22, 2016.  Relator's knowledge is independent of and
materially adds to any publically disclosed allegations or transactions related to
Hunters Point, and Relator has voluntarily provided the information to these
government representatives before filing this action under the False Claims Act.

28.     Relator is an original source of the information pertaining to Treasure
Island and the fraud and false records and statements material to false and fraudulent
claims submitted by Shaw Environmental and Infrastructure and RSRS.  Relator's
knowledge is independent of and materially adds to any publically disclosed
allegations or transactions, and has voluntarily provided the information to the
government representatives on February 22, 2016 before filing an action under this
section.  Relator does not know of public disclosure of the fraud and false statements
pertaining to allegations or transactions which are hereinafter alleged pertaining to
activity at Treasure Island.

29.     Shaw entered into remediation contracts with the Navy in the later years
of the 2000's to remediate the former Naval Station Treasure Island, including but not

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-8421

12.

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

1   limited to N62473-10-D-0807. The Navy acquired Treasure Island in 1942 for use as a

2   naval base during World War II.  Treasure Island became a major naval facility during

3   World War II, processing thousands of outgoing and incoming military personnel.

4   The Navy's conducted a Historical Radiological Assessment (HRA) of Treasure

5   Island that was completed in 2006.  The HRA assessed existing buildings and

6   historical sites for radioactivity.  Approximately 18 sites were identified as requiring

7   further review, and Radium-226 was found in former bunkers on Treasure Island.  In

8   addition to radioactive waste concerns, the Navy studies of Treasure Island revealed

9   contamination by lead, PCBs, TCE, PCE, and petroleum among other chemical

10   contaminants.

11       30.     The contracts between Shaw and the Navy to perform remediation

12   services at Treasure Island included the requirement that further study and surveys be

13   conducted of Treasure Island for radioactive contamination.  The contracts and

14   Basewide Radiological Management Plan incorporated into the contracts called for a

15   NRC licensed entity to conduct surveys of areas to be surveyed and remediated for

16   radioactive materials at Treasure Island.  The Navy contract and accompanying

17   requirements provided that prior to any soils and materials being excavated, moved

18   and removed from Treasure Island by Shaw and its subcontractors, that the material be

19   scanned and evaluated by the NRC licensed entity and cleared for the presence of any

20   radionuclides of concern, primarily Radium -226, and Cesium-137.  The Navy

21   requirements prohibited the off-site removal of soils and material from Treasure

22   Island that had not been screened and cleared for radioactive materials above release

23   levels.  The contract with the Navy required that if any soils or material were scanned

24   and found to have radioactive readings above contractually set limits, then the soil and

25   material were to be treated as radiologically impacted Low-Level Radioactive Waste

26   (LLRW).  The contracts and incorporated provisions of the agreement with the Navy

27   required that all LLRW be segregated, placed in LLRW bins and disposed of through

28   the Department of the Navy's LLRW Disposal Program.  The LLRW was required to

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-8421

13.

1    be identified to the Navy's RASO office, with testing and a request for disposal

2    through the Department of Defense LLRW Executive Agency, and disposed of in one

3    of the four disposal sites for LLRW in the United States.

4        31.    There is substantial time and expense to properly scan, and test for

5    LLRW.  There is substantial time and expense to properly segregate and arrange for

6    disposal of LLRW.  The contracts between Shaw and the Navy required that these

7    very specific time consuming activities be carefully done to assure that Treasure

8    Island was properly remediated of radioactive wastes and to assure that LLRW was

9    not improperly disposed of off Treasure Island in non-LLRW disposal sites,

10   potentially jeopardizing the health and safety of individuals and the environment far

11   beyond Treasure Island.  Shaw falsely certified or implied certified that proper

12   scanning, testing, segregation, and disposal of LLRW was done under the contracts

13   for Treasure Island, as more fully set forth herein, along with other frauds resulting in

14   false records material to false claims.

15       32.    Beginning in approximately late 2006 and continuing, the Project

16   Manager for Shaw, Peter Bourgeois directed laborers to work and unlawfully assisting

17   Shaw in stealing copper from Treasure Island by stripping the copper from buildings

18   owned by the United States.  The work time of the laborers was falsely reported to the

19   Navy as hours worked for the remediation of lead, PCBs and other contaminants on

20   Treasure Island.  The false reporting of the hours as time properly incurred in the

21   remediation of lead, PCBs and other contaminants was material to the requests for

22   payment by Shaw to the Navy for the services.  The copper obtained by the workers

23   stripping the Treasure Island buildings was not reported to the Navy, was sold but not

24   accounted for to the Navy, nor were the funds delivered to the Navy.  Shaw certified

25   or impliedly certified that it was properly performing the services contracted for with

26   the Navy, and falsely made those certifications when Shaw was effectively having the

27   Navy pay for the wages of laborers used to steal for Shaw copper from the Treasure

28   Island buildings that belonged to the Navy.  The conduct of Shaw related to the

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

1  unlawful stripping of copper owned by the United States, the selling the copper for

2  private gain, the creation of records that the hours worked were for remediation

3  purposes under the contract with the Navy, the failure of Shaw to report the

4  possession, custody, and control of the copper which was the property of the United

5  States, and the failure to Shaw to turn over the copper or the money derived from the

6  sale of the copper to the United States violated 31 USC Section 3729 (a) (1) (A), (B),

7  and (D).

8      33.    Under the contract with the Navy, Shaw was to have soil and material

9  properly tested and cleared for radioactive contamination as a condition of the soil and

10  material being moved or removed from Treasure Island.   Soil and material that was

11  properly scanned, tested and approved as non-LLRW was permitted under the contract

12  to be disposed of at standard disposal sites, such as Class II landfills.  Soil and

13  material that was properly scanned, tested, and determined to be LLRW was required

14  to be carefully segregated, contained, and processed through the Navy and

15  Department of Defense LLRW processes and disposed of in the Clive, Utah,

16  Grandview, Idaho or one of the other four LLRW disposal sites for Department of the

17  Navy LLRW.

18      34.    Shaw subcontracted the services of New World Environmental, Inc. and

19  later RSRS, Inc. to test at Treasure Island for radioactive materials in the soil and

20  materials that could have intensity above release levels and be categorized as LLRW.

21  Areas that were determined by New World Environmental or RSRS as Radiologically

22  Controlled Areas (RCA's) were not to have soils removed without first being

23  surveyed, sampled, tested and determined to have radioactivity levels below the

24  Remediation Goal (RG) pursuant to the terms of the SOP.  Shaw was required to

25  coordinate with the radiological subcontractors, New World Environmental and

26  RSRS, regarding all work areas planned so that there could be Radiological Control

27  Technicians present to monitor and scan for radiological hazards.

28

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-758-8421

15.

35.     Shaw intentionally excavated soils and materials from Treasure Island established Radiologically Controlled Areas and from areas that had not yet been evaluated for determination whether the area should be deemed a Radiologically Controlled Area without having the soil and materials first surveyed, sampled and determined to be below the RG.  Shaw's removal of soils from Radiologically Controlled Areas without following the SOP of having the soil determined to be below RG before the soil was removed excavated was intentional and knowing.  Shaw intentionally removed soils from areas that were known to not yet have been determined whether the area was radiologically impacted and should be a Radiologically Controlled Area.  Shaw's intentional excavating of soils from these two types of areas from Treasure Island took place no later than early 2007 and continued thereafter.  Some of the excavated soils improperly removed were deposited into other areas of Treasure Island contrary to the contract and terms established by the Navy.  Some of the excavated soils improperly removed were shipped off Treasure Island and improperly disposed of without having been radiologically screened, tested, sampled, and remediated as required by the contract and terms established with the Navy.  Shaw submitted false records to the Navy that certified or impliedly certified that all soil and materials that were excavated and moved on Treasure Island or shipped off of Treasure Island had been properly surveyed, scanned, tested, and determined to be below RG and not LLRW when Shaw had knowledge that soils and materials had intentionally been shipped off Treasure Island from areas and RCA's without having been properly surveyed, scanned, tested and determined to be below RG and not LLRW.  Shaw had knowledge that Shaw had directed that soils and materials be excavated and moved on Treasure Island or shipped off Treasure Island in a manner to avoid being surveyed, scanned, and tested that were in RCA areas.  These conducts and false records have resulted in an expanded requirement of remediating Treasure Island because radiologically hazardous materials were moved and spread into non-radiologically impacted areas of Treasure Island as a result of the

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

frauds and process violations of Shaw. Radiologically hazardous materials have been spread into areas outside of Treasure Island due to the fraudulent and process violations by Shaw potentially harming the environment and individuals beyond Treasure Island, and exposes the United States to liability for the radiological contamination to third persons and property off Treasure Island.

36.    Under the contracts with the Navy, Shaw was to have areas determined whether the area had radioactive contamination above RG before Shaw removed soils, relocated soils on Treasure Island, or transported the soils off Treasure Island. Shortly after being sub-contracted by Shaw in 2006, New World Environmental began finding radioactive materials above release levels at Treasure Island in areas that had not previously been reported in the Navy's HRA as containing radioactive materials. Shaw management, to cut costs, increase profits, and falsely complete remediation services for the Navy, took intentional actions to excavate soils and materials from Treasure Island that contained other contaminants such as lead and PCBs without having New World Environmental radiological control technicians oversee the soil extraction to determine whether the soil contained radioactive wastes above RG. Shaw did not comply with SOP of notifying New World Environmental and later RSRS of digs, soil and material removals to take place on Treasure Island, and Shaw management planned and scheduled digs for soil and material removal in areas that employees of New World Environmental and later RSRS were not present or in the vicinity to maximize the probability that extensive soil extractions could take place and soils shipped off Treasure Island or relocated at Treasure Island without the time and expense involved in having the soil and material scanned, sampled, and tested for radioactivity above RG LLRW standards, and having the soil remediated if there was radioactivity above RG, and avoid the time and costs associated with preparing the soil and material for disposal due to the remediation. Shaw certified or impliedly certified that Shaw was following set procedures for the scanning, testing and remediation of soil and materials for radioactivity above RG, when in fact Shaw was

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-0421

17.

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

1    intentionally circumventing the SOP and requirements to test and remediate if

2    necessary soils and materials for radioactive contamination above RG levels.

3        37.    Under the contracts with the Navy for Treasure Island, Shaw was to

4    properly segregate and control radioactive samples and retain the samples for potential

5    future evaluation.  Shaw certified that it was complying with the requirements

6    established by the Navy contract. However, Shaw did not properly segregate and

7    control the radioactive samples, but stored the samples in a manner contrary to

8    contract, established SOP, and accepted industry standards.  Further, Shaw failed to

9    retain the radioactive samples, but had the radioactive samples disposed of as if the

10   samples were non-low level radioactive waste, and the LLRW was improperly

11   disposed of at level 2 landfills in 2008, 2009, 2010, and 2011.  Shaw management

12   knew it failed to properly segregate and control radioactive samples and retain

13   radioactive samples.  Shaw's certification and implied certification of meeting these

14   standards were knowingly false.  Shaw falsely identified shipments off Treasure

15   Island as non-LLRW when the shipments did contain LLRW and LLRW that had

16   been sampled and determined to be LLRW above RG.  These false implied

17   certifications were material to false claims for payment from the Navy.

18       38.    Under the contracts with the Navy, radioactive material and devices were

19   required to be properly stored in proper containers for radioactive materials, properly

20   cleared for disposal, and disposed of in licensed low level radioactive disposal sites.

21   Radioactive materials and devices were improperly stored by Shaw in sea-land type

22   shipping containers on site rather than proper containers for LLRW.  Shaw had one or

23   more sea-land type containers loaded with radioactive material and devices that there

24   determined to be LLRW above RG that Shaw had removed and disposed of at a

25   disposal site that was not licensed to receive low-level radioactive waste.  The sea-

26   land containers were not processed for removal as required, did not obtain approval

27   from the Navy for removal, and no exception for proper disposal was obtained by

28   Shaw.  Shaw certified and impliedly certified that it complied with the requirements of

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

18.

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

1   the contract with the Navy for the handling of hazardous waste and radioactive

2   materials, and the certification was false.  One or more sea-land type shipping

3   containers were improperly removed and disposed of Treasure Island radioactive

4   material and devices while New World Environmental, Inc. was a sub-contractor for

5   Shaw on Treasure Island.  Managers of New World Environmental, Inc. objected to

6   management of Shaw regarding the removal and disposal of the sea-land containers

7   loaded with radioactive material and devices that were LLRW without having the

8   material processed and approved by the Navy as LLRW and disposed of as LLRW as

9   required by the Navy.  Shaw's express and implied certification that it was complying

10  with the terms of the contracts and the requirements therein that radioactive wastes

11  would be properly scanned, tested, and LLRW properly disposed of as required by the

12  Navy was false, and was material to the false claims made by Shaw to the Navy.

13      39.    Shaw obtained from a Navy representative manifests signed by Jim

14  Sullivan for approximately 200 truck shipments of soil and debris to leave Treasure

15  Island, before the truck shipments had been loaded.  The manifests were not for the

16  shipment of low level radioactive wastes and soil above RG levels.  Shaw fraudulently

17  used the pre-signed manifests to load trucks with low level radioactive soils and

18  materials above RG levels or soils for which required radiological screening was not

19  performed and shipped the soils off Treasure Island to standard level Class II landfills

20  as if the soil and materials had been tested and determined to not have LLRW in the

21  shipment.  Shaw used the pre-signed manifests to load trucks with soils and materials

22  that had not been scanned, sampled, and tested for LLRW as required by the contracts

23  with the Navy.  Shaw knowingly shipped the soils and materials off Treasure Island in

24  violation of the contractual requirements that such material be properly scanned,

25  sampled, and tested to determine if the material is LLRW.  Shaw certified or impliedly

26  certified that the shipments met the standards for the manifests and the SOP set by the

27  Navy, when the shipments violated these rules, regulations and SOPs.  The

28  fraudulently used pre-signed manifests were utilized by Shaw in 2007 and thereafter.

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-8421

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

40.     Shaw obtained and billed the Navy for approximately 600 intermodal containers for the shipment of low level radiological wastes.  The billing to the Navy was for the containers to be obtained, filled, and prepared for shipment to low level waste facilities licensed by the United States.  Shaw billed the Navy for these intermodal containers as if Shaw had filled and prepared the shipments, and the intermodal containers had been shipped to LLRW facilities.  The billing for the 600 intermodal containers to the Navy was false for the 600 intermodal containers had not been prepared, cleared and shipped when the Navy was billed and paid the billings. Rather, the intermodal containers remained at Treasure Island and had not been processed and cleared for shipment.  The records and claim for payment by Shaw that contained the expenses for the intermodal containers for preparation and shipment were false.

41.     Shaw, Tetra Tech EC, Inc. and RSRS falsified scanning and soil sample testing for radioactive contamination at Treasure Island by scanning improperly to avoid radioactive readings above RG levels.  These companies also avoided taking soil samples from specific locations known or scanned that resulted in the highest radioactive readings in order to minimize the determinations of which areas met the standards to be treated as radiologically controlled areas, and later to obtain remediation clearance with final status surveys where the sampling and scanning was done to avoid higher levels of radiation in order to obtain unrestricted radiological release for the areas of Treasure Island reported to the Navy.  The falsified scanning and soil sampling at Treasure Island to avoid radioactive readings for areas above RG levels took place in 2009 and continued thereafter, and may be continuing.  The false records were material to the payments by the Navy for the work performed.

////

////

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-758-8421

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.

## PRAYER FOR RELIEF

42.    Relator, on behalf of the United States of America and the United States Navy seek through this action 3 times the damages the government has and will sustain because of the acts of defendants;

43.    Relator, on behalf of the United States of America and the United States Navy seek through this action a civil penalty as provide by 31 USC Section 3729(a)(1)(G) for each false claim and each false record or false statement material to a false claim;

44.    For an award to the qui tam plaintiff as provided for by 31 USC Section 3730(d);

45.    For an award of reasonable attorney fees and costs.


A jury trial is demanded.


Dated: March 3, 2016                    Law Office of David Anton

                                        By: _____
                                            David C. Anton

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

FCA Complaint - US & Smith v Tetra Tech, Inc. et al.